**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SARAH BUCKLEW** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 3:18-cv-2117** |
| **OFFICER MATT ST CLAIR,** | § | |
| **OFFICER M. CLARK,** | § | |
| **AND CITY OF GARLAND,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Sarah Bucklew, complaining of Defendants, Officer Matt St Clair, Officer M. Clark, and the City Of Garland, hereby files *Plaintiff's Original Complaint and Jury Demand* and respectfully shows the following:

## I.      NATURE OF THE ACTION

1.      This is a civil rights action for damages arising under the Fourth Amendment to the U. S. Constitution and laws of the United States and the State of Texas. Ms. Bucklew was illegally seized, handcuffed, and taken to a hospital by the individual Defendant police officers of the City of Garland without a warrant in violation of Ms. Bucklew's Fourth Amendment rights. Defendants were angry because Ms. Bucklew had been telephoning the police in Garland and accusing someone in Garland of hacking her computers and Defendants were tired of her telephone calls.

2.      Ms. Bucklew's home was in Sachse, Texas, not in Garland, Texas, and no one

1

who lived with her at her home, or anyone else who was with her at the time, called the Garland Police Department and reported any actions by Ms. Bucklew that could be considered a substantial risk of serious harm to Ms. Bucklew or to any other person.

3.    Further, when the individual Defendants arrived at Ms. Bucklew's home in Sachse, she was merely watching television with her four year old son. She was handcuffed in front of her son and was involuntarily seized and taken to a hospital without a warrant, without probable cause and in violation of Texas Health and Safety Code § 573.001 et seq.

## II.    PARTIES

4.    Ms. Bucklew is a citizen and adult resident of Dallas County, Texas, U.S.A.

5.    Defendant Officer Matt St Clair is an individual citizen and believed to be a resident of Texas and at all relevant times was employed by the City of Garland as a police officer. He is sued in his individual capacity and can be served with Summons at his work address at Garland Police Department, 1891 Forest Ln, Garland, TX 75042.

6.    Defendant Officer M. Clark is an individual citizen and resident of Texas and at all relevant times was employed by the City of Garland as a police officer. He is sued in his individual capacity and can be served with Summons at his work address at Garland Police Department, 1891 Forest Ln, Garland, TX 75042.

7.    Defendant City of Garland, Texas is created as a municipal corporation by charter of 1951 and it may be served with process by personal delivery on the City of Garland

Secretary René Dowl, at City of Garland Municipal Building, 200 N. Fifth Street, Garland, Texas 75046-9002.

### III.   JURISDICTION

8.    This action to vindicate Plaintiff's rights protected by the Fourth Amendment to the U.S. Constitution is brought under 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4).

### IV.   VENUE

9.    Venue is proper under 28 U.S.C. § 139l (b) because one or more Defendants reside in the Northern District of Texas.

10.    Venue is also proper under 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to the claims occurred in the Northern District of Texas.

### V.   FACTS

11.    On May 1, 2018, Ms. Bucklew lived in Sachse, Dallas County, Texas.

12.    Officer Matt St Clair and Officer M. Clark ("Individual Defendants") came to Ms. Bucklew' s house on May 1, 2018 around 3:30 pm and began knocking on her front door.

13.    Ms. Bucklew was watching television with her son and had not invited the police and so she just kept watching television with her son.

14.    They pounded on her front door for about 15 minutes, and then they went to the gates on her fence in her backyard and acted as if they were going to go into her backyard without permission.

3

15. Then it is believed they both went back to their patrol cars and Officer Matt St Clair called Ms. Bucklew's sister.

16. Ms. Bucklew's sister then telephoned her and told her the police were there and she could open the door.

17. Then Officer Matt St Clair came back to Ms. Bucklew' s front door to continue pounding on her front door at which time Ms. Bucklew answered the front door.

18. The first question Officer Matt St Clair asked was, "Have you gotten your medicine yet?"

19. Ms. Bucklew told him no, but she had an appointment later in the week for a new doctor to get a prescription.

20. Officer Matt St Clair and Officer M. Clark told Ms. Bucklew to go back inside the house for a while and they would knock on the front door when they wanted to speak again.

21. Officer Matt St Clair then called Ms. Bucklew' s sister again and told her they would be involuntarily committing Ms. Bucklew to the hospital and that Ms. Bucklew's sister needed to come take possession of Ms. Bucklew' s 4-year old son so he would not have to be involved with CPS.

22. The Officers then went back to Ms. Bucklew's house and she came outside to talk with them this time.

23. Ms. Bucklew's boyfriend Chris arrived home shortly after Officer Matt St Clair started speaking with Ms. Bucklew for the second time.

24. Officer Matt St Clair told Ms. Bucklew to stand at the end of her driveway and wait there with Officer M. Clark.

25. Officer Matt St Clair and Officer M. Clark would not let Ms. Bucklew go near her front door or her 4-year old or go towards her house. They would not let Ms. Bucklew move. Officer St Clair tried explaining to Chris down who was standing with his and Ms. Bucklew's four year old son by the front door of their home.

26. Chris told them they had no jurisdiction to take Ms. Bucklew and told Ms. Bucklew to come inside the house, which both officers would not allow.

27. Officer Matt St Clair said because Ms. Bucklew would not go willingly, he would be taking her against her will to a hospital.

28. Ms. Bucklew said to Officer Matt St Clair "you think I am crazy," and he told Ms. Bucklew, "I don't think you are crazy, I think you are depressed because you cannot work."

29. Chris begged them to let Ms. Bucklew put on a bra and Ms. Bucklew was begging them to let her put pants on because she was improperly dressed to be going anywhere in public.

30. Officer Matt St Clair then went to Ms. Bucklew and put handcuffs on her and tried to talk to her as she was being handcuffed in her front yard and Ms. Bucklew told him "don't talk to me now, put me in the car" because she did not want her neighbors anyone else who might happen to drive past to see her handcuffed.

31. During the entire incident, Ms. Bucklew did not commit any violent or aggressive acts or make any threats that would give the Defendants' any reason to believe that she would commit any serious harm to herself or any other person at the scene. At no time did Defendants observe Ms. Bucklew with a weapon, see her take any acts that would appear to threaten harm to herself or any other person, or hear her make any threats to harm

herself or others.

32.    When he got in the driver's seat of his car to drive, Officer Matt St Clair asked Ms. Bucklew for her sister's phone number (although he had already just called her sister twice) because he had told her sister the wrong hospital.

33.    Officer Matt St Clair had to follow the directions on his computer to Richardson Methodist Hospital on Campbell Road in Richardson, Texas, as he had apparently never been there before or did not remember.

34.    When they arrived at Richardson Methodist Hospital neither officer knew how to get into the building and they went into several doors which were not the correct doors to the hospital.

35.    Ms. Bucklew said to them, "Have y'all never done this before?" Officer Matt St Clair said they had, but they were acting like they had never been to the hospital before. Ms. Bucklew asked, "Then why did y'all take me here?" Neither officer gave her an answer.

36.    After they arrived in the emergency part of Richardson Methodist Hospital Ms. Bucklew sat down and remained handcuffed as Officer Matt St Clair wrote out a narrative for the involuntary commitment at the hospital.

37.    The hospital staff gathered around and listened intently to the story Officer Matt St Clair was telling them, but he was speaking too softly for Ms. Bucklew to hear. And at times he would cover his mouth and whisper to the hospital staff and they would react with wide eyes and wide mouths.

38.    The officers' reasons for seizing Ms. Bucklew had nothing to do with any specific recent behavior, overt acts, attempts, or threats observed by the officers or reports of such

6

by any other person of any acts of Ms. Bucklew or statements by her indicating any substantial risk of serious harm to herself or others unless she was immediately restrained, but only because Garland Police were tired of her telephone calls and accusations.

## VI.     ACTIONS AGAINST INDIVIDUAL DEFENDANTS
## UNDER 42 U.S.C. § 1983
## FOR VIOLATION OF THE FOURTH AMENDMENT

39.     Ms. Bucklew adopts by reference the facts and allegations set forth above as though fully set forth herein.

40.     The Fourth Amendment right to be free from unreasonable seizure of a person without a warrant supported by probable cause was clearly established at the time of the events in this case.

41.     Texas had (and still has) a statute, Texas Health and Safety Code § 573.001 et seq., authorizing law enforcement officers to seize persons without a warrant if the conditions set forth in the statute are met.

42.     Individual Defendants, acting under color of law, illegally deprived Ms. Bucklew of certain constitutionally and statutorily protected rights, for which acts Ms. Bucklew sues as follows:

i. Individual Defendants did not have a warrant or Ms. Bucklew's consent to seize her and did not meet any of the exceptions for seizure without a warrant;

ii. There was no probable cause for seizure without a warrant under Texas Health and Safety Code § 573.001 et seq. and Individual Defendants did not comply with the requirements of the statute;

iii. Individual Defendants did not immediately inform Ms. Bucklew of any

legal reason for her detention, as required by Texas Health and Safety Code § 573.001 (g); and

iv. Individual Defendants did not have reason to believe Ms. Bucklew had to be immediately restrained because: (1) Individual Defendants did not observe Ms. Bucklew engage in any conduct that could pose a substantial risk of serious harm to herself or others; (2) Individual Defendants did not hear Ms. Bucklew make any statements suggesting any substantial risk of serious harm to herself or others; (3) no person who was with Ms. Bucklew immediately before or at the time of her seizure reported that Ms. Bucklew had engaged in any conduct suggesting any substantial risk of serious harm to herself or others or that they had heard Ms. Bucklew threaten to harm herself or any other person, and (4) there was sufficient time to obtain a warrant before taking Ms. Bucklew into custody, if the Defendants' had any real basis for a warrant.

43.   Under the totality of the circumstances, Individual Defendants did not have probable cause to seize Ms. Bucklew without a warrant, handcuff her in plain view of her boyfriend and four year old son, her neighbors, and anyone else who might be passing by, take her to a mental hospital and leave her in the custody of the hospital overnight.

## VII.   ACTION AGAINST CITY OF GARLAND UNDER 42 U.S.C. § 1983

44.   Ms. Bucklew adopts by reference the facts and allegations set forth above as though fully set forth herein.

45.   The violations of Ms. Bucklew's constitutional rights under the Fourth Amendment to the U. S. Constitution, Ms. Bucklew's damages, and/or the conduct

of the Individual Defendants were directly and proximately caused by the actions and inactions of Defendant City of Garland, which has encouraged, tolerated, ratified, and has been deliberately indifferent to the following policies, procedures, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

    a.      Legal cause to seize a citizen perceived to be mentally ill without a warrant;

    b.      Officer's duties and responsibilities to engage in proper investigative techniques;

    c.      Officer's constitutional duties to disclose exculpatory evidence;

    d.      The failure to identify and take remedial or disciplinary action against officers who were the subject of civilian complaints of misconduct; and

    e.      The failure to properly sanction or discipline officers who are aware of and conceal and/or aid and abet constitutional and statutory violations of citizens' rights by the City of Garland police.

46.    Upon information and belief, the City of Garland, through its policy maker, had notice of the violations of constitutional rights by its officers and failed and refused to take action to stop and prevent such violations.

47.    Upon information and belief, the City of Garland allowed customs or practices to exist with its officers 1) of not complying with the statutory requirements for the evidence required prior to seizing and transporting to the nearest appropriate inpatient

9

mental health facility, without a warrant, a person alleged to have a mental illness, and 2) of retaliating against persons for lawfully reporting alleged violations of law by employees of government agencies.

48.    As shown herein, police officers of the City of Garland seized Ms. Bucklew, handcuffed her, and took her to a mental hospital and left her in the custody of the hospital 1) without her consent, 2) without a warrant, and 3) without probable cause meeting the statutory requirements of Texas Health and Safety Code § 573.001..

49.    Upon information and belief, other persons have been seized by officers of the City of Garland police without a warrant, without meeting the statutory requirements of Texas Health and Safety Code §§ 573.001 and 573.002, and without the requisite evidence.

50.    Upon information and belief, at the time of the events in this case, the City of Garland did not have (Plaintiff believes that the City of Garland still does not) sufficient written policies, procedures, practices, and customs providing guidance and direction to officers of the City of Garland's police regarding the following issues, which caused Plaintiff's damages in whole or in part:

    a.    concerning obtaining, issuance and use of a warrant for apprehension of persons by peace officers under Texas Health and Safety Code§ 573.001;

    b.    concerning the identification, assessment, and determination of a substantial risk of serious harm to a person or others unless said person is immediately restrained under Texas Health and Safety Code § 573.001;

    c.    concerning what constitutes sufficient time to obtain a warrant

before taking a person into custody under Texas Health and Safety Code § 573.001:

      d.    concerning the enforcement of Texas Health and Safety Code §§ 573.00 l and Sec. 573.002.

51.    Upon information and belief, the City of Garland has not provided adequate training to its officers upon the foregoing issues and such lack of sufficient policies, procedures, practices, and customs and training has caused Ms. Bucklew's damages in whole or in part.

52.    During all relevant times, Police Chief Mitch Bates was the City's final policymaker regarding the conduct of its police officers and had actual or constructive knowledge of the inadequate policies, procedures, customs, practices, supervision, training, and lack of discipline that, in reasonable probability, caused the incident that forms the basis of this lawsuit. In the alternative, the City Council of Garland or the Civil Service Board, are the final policymakers for the Garland Police Department's policies, procedures, customs, and practices and have actual or constructive knowledge of the inadequate supervision, training, and lack of discipline that, in reasonable probability, caused the incident that forms the basis of this lawsuit.

### VIII.  LACK OF QUALIFIED IMMUNITY

53.    Ms. Bucklew adopts by reference the facts and allegations set forth above as though fully set forth herein.

54.    Individual Defendants are not entitled to qualified immunity as a result of their failure to comply with the statutory requirements of Texas Health and Safety Code §§ 573.001 and 573.002.

11

55.    Individual Defendants did not observe Ms. Bucklew engage in any behavior or hear Ms. Bucklew make any statements that would have given any reasonable officer in their position at the time any reason to believe that there was a substantial risk of serious harm to Ms. Bucklew or others unless Ms. Bucklew was immediately restrained.

56.    Other than their arguable subjective beliefs, Individual Defendants did not have objective evidence of severe emotional distress and deterioration in Ms. Bucklew's mental condition to the extent that Ms. Bucklew could not remain at liberty.

57.    Individual Defendants' actions violated "clearly established statutory and constitutional rights of which a reasonable officer would have known."

58.    No reasonable officer confronting a situation under the same or similar circumstances as Individual Defendants would have concluded that seizing Ms. Bucklew, handcuffing her, and taking her to a mental health facility without obtaining a warrant was appropriate, and Individual Defendants should not be entitled to any protection of Qualified Immunity to avoid accountability in this case.

### IX.    DAMAGES AND ATTORNEY'S FEES

59.    Ms. Bucklew adopts by reference the facts and allegations set forth above as though fully set forth herein.

60.    As a direct and proximate result of Defendants' unlawful actions, Ms. Bucklew suffered deprivations of her constitutional rights guaranteed by the Fourth Amendments of the U.S. Constitution.

61.    As a direct and proximate result of the conduct of all defendants, Ms.

12

Bucklew suffered damages, some of which may be permanent, including medical/hospital bills, loss of liberty, emotional distress and trauma, loss of the enjoyment of life, financial losses, and physical symptoms of anxiety and depression such as headaches, difficulty sleeping and nightmares, loss of reputation (affecting her employability), shame, embarrassment, humiliation, mental anguish, pain and suffering, and such other compensatory and tangible consequential damages as the law entitles her to recover.

62.     Ms. Bucklew seeks punitive damages against Defendants Officer St. Clair and Officer M. Clark for their intentional, willful and wanton acts completely ignoring and violating "clearly established statutory and constitutional rights of which a reasonable officer would have known."

63.     Ms. Bucklew hereby sues for these damages, and prays for just and fair recovery thereof.

64.     Ms. Bucklew is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

## X.     DEMAND FOR JURY TRIAL

65.     Ms. Bucklew demands a trial by jury.

## XI.     PRAYER FOR RELIEF

66.     For the foregoing reasons, Ms. Bucklew respectfully requests judgment for the following and ask the Court to:

    i.     Award compensatory damages as described above in Paragraph IX against all Defendants, jointly and severally, in an amount to be

determined at trial;

ii.      Alternatively award nominal damages for violations of Ms. Bucklew's civil rights;

iii.     Award punitive damages against the Individual Defendants (not against the City of Garland);

iv.      Award costs, expenses, and attorney fees pursuant to 42 U.S.C. § l988(b); and

vi.      Enter such other relief as this honorable Court may deem just and deserving.

DATED this 14 day of August 2018.

> Respectfully submitted,
>
> By: /s/*Kervyn B. Altaffer, Jr.*
> KERVYN B. ALTAFFER, JR.
> State Bar No. 01116575
> ALTAFFER & CHEN PLLC
> 4054 McKinney Ave, Ste. 310
> Dallas, TX  75204
> Tel (972) 234-3633
> Fax (972) 947-3663
> kervyn@altafferlaw.com
>
> ATTORNEY FOR PLAINTIFF

14