# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SARAH BUCKLEW, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-2117-N (BH) |
| | § | |
| OFFICER MATT ST. CLAIR, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Order of Reference*, filed December 14, 2018 (doc. 19), this *pro se* case has been referred for full case management.[1] Before the Court for recommendation is *Defendants Officer Matt St. Clair, Officer M. Clark, and City of Garland's Motion to Rescind Court's Prior Order Granting Plaintiff's Pauper Status and to Dismiss and Brief in Support*, filed September 10, 2018 (doc. 14). Based on the relevant filings and applicable law, the motion should be **GRANTED,** and Plaintiff's case should be **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND[2]

On August 14, 2018, Sarah Bucklew (Plaintiff) filed this civil rights action under 42 U.S.C. §§ 1983 and 1988 against Garland Police Officers Matt St. Clair and M. Clark (Officers), in their individual capacities, and the City of Garland (City) (collectively, Defendants), for allegedly violating her Fourth Amendment rights when she was involuntarily admitted to a psychiatric hospital on May 1, 2018. (*See* doc. 1 at 2, 7-12.) She seeks compensatory damages "against all Defendants, jointly and severally, in an amount to be determined at trial;" nominal damages for violations of her

---

[1] Plaintiff was initially represented by counsel, but counsel was allowed to withdraw by order dated October 24, 2018. (*See* docs. 16, 18.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

civil rights; punitive damages against the officers; costs, expenses, and attorney fees under 42 U.S.C. § 1988(b); and "other relief" the Court deems "just and deserving." (*Id.* at 14.)

A. **Application to Proceed *In Forma Pauperis***

Also on August 14, 2018, Plaintiff applied for leave to proceed *in forma pauperis* (IFP). (*See* doc. 2.) Her IFP application was signed and dated on June 14, 2018, and it declared under penalty of perjury that the information in the IFP application was true, and that Plaintiff understood that "a false statement may result in a dismissal" of her claims. (*Id.* at 1.) It reported that her average monthly income amount during the prior twelve months was $0, there were no funds in her Wells Fargo checking and savings accounts, and "sarabucklewcom" was her last employer from January 2013 to June 2017, with gross monthly pay of $12,000. (*Id.* at 1-2.) The application explained that Plaintiff was self-employed as a web developer but had been unable to work since June 2017 because her "network was hacked." (*Id.* at 6.) It estimated that she was paying $2,250 a month for expenses, including rent/mortgage payments, utilities, maintenance, food, clothing, laundry, medical and dental expenses, and transportation. (*Id.* at 4-5.) Her paid monthly expenses did not include payments for any type of insurance, taxes, credit card or other installment debts, alimony or child support, or any unspecified expenses. (*Id.*) The application stated that Plaintiff's only asset was a home valued at $407,000. (*Id.* at 3.)

B. **Bankruptcy Proceedings**

Two months before filing this lawsuit, Plaintiff filed for Chapter 13 bankruptcy protection in the Northern District of Texas.[3] (doc. 14 at 8-46.) On June 15, 2018, a day after signing her IFP application in this case, Plaintiff filed various statements signed under penalty of perjury in that case

---

[3] *See In re Sarah Bucklew*, Cause No. 3:2014bk32143 (Bankr. N.D. Tex. Jun. 1, 2018).

detailing her financial situation. (*Id.*) The statement of current monthly income listed $11,183.33 as her total average monthly income in the prior six months. (*Id.* at 8.) A Schedule A/B listed a home valued at $405,000 and a Bank of Texas checking account with $1,000. (*Id.* at 26, 30.) Her Schedule I described her employment status as "employed" and estimated her current monthly income at $11,185.00. (*Id.* at 42-43.) A Schedule J estimated her then current monthly expenses at $6,010.00. (*Id.* at 45.)[4]

## C. State Court Criminal Proceedings

On or about June 28, 2018, Plaintiff was indicted in Dallas County, Texas, for harassment. (doc. 28 at 9-10.)[5] In support of her request for appointed counsel for that case, she submitted a Confidential Affidavit of Financial Condition, dated July 16, 2018, in which she swore "under penalty of perjury" that the information she provided was "true, correct, and complete," and "that all information in this affidavit is subject to verification and that falsifying this information is a criminal offense." (*Id.* at 13.) In it, she swore that she did not have a salary but was receiving $1,200 a month from "spouse's salary/other household income." (doc. 28 at 13.) She estimated her monthly expenses at $4,040, including $900 for car payments and insurance and $500 for child support. (*Id.*) Under nonexempt assets, she listed a vehicle valued at $5,000, and expressly indicated

---

[4] The bankruptcy was dismissed with prejudice on September 10, 2018, after Plaintiff failed to timely make the first payment under the bankruptcy plan. *See In re Sarah Bucklew*, Cause No. 3:2014bk32143 (doc. 41). She previously filed two other Chapter 13 bankruptcies that were also dismissed because she failed to timely pay under the plan. *See In re: Sarah Marie Bucklew*; Cause No. 3:2014bk32143, 3:2014bk32143 (Bankr. N.D. Tex. 2014); *In re: Sarah Marie Bucklew*; Cause No. 3:2015bk33973 (Bankr. N.D. Tex. 2015).

[5] *See State v. Sarah Marie Bucklew*, M1804091K, Dallas County Criminal Court No. 9 (June 28, 2018). In her response, Plaintiff notes that she "is currently involved in a criminal action pending against her in Dallas County, MB-1804091." (doc 26 at 2-3.)

that she did not have real property or bank accounts. (*Id.*)[6]

On September 10, 2018, Defendants moved for a determination of whether Plaintiff submitted a false affidavit of poverty in this case, and if so, for dismissal of this entire action. (doc. 14 at 2.) Plaintiff responded on January 15, 2019. (doc. 26.) Defendants filed their reply brief and appendix on January 24, 2019, and Plaintiff objected to the reply and appendix on February 5, 2019. (docs. 27-29.)

## II.  28 U.S.C. § 1915

"The federal [IFP] statute, codified at 28 U.S.C. § 1915, allows an indigent litigant to commence a civil or criminal action in federal court without paying the administrative costs of proceeding with the lawsuit." *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). It was designed to ensure that litigants would not be deprived of meaningful access to the federal judicial system due to their financial circumstances. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). A litigant seeking IFP status must submit an affidavit identifying all assets she possesses, as well as a statement that she is unable to pay the necessary fees of bringing a federal civil action. *See* 28 U.S.C. § 1915(a)(1).

If the court finds at any time that "the allegation of poverty is untrue," the IFP statute provides that it must dismiss the case, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid." 28 U.S.C. § 1915(e)(2)(A); *see also Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016) (noting that district courts retain authority and discretion to conduct reasonable investigations into allegations of poverty even after the filing fee has been paid). Dismissal is mandatory if the court determines that "the contents of an IFP application are

---

[6]Defendants also offer evidence of Plaintiff's pauper status being questioned and revoked by a state court in an unrelated 2011 lawsuit.

false." *Nottingham*, 837 F.3d at 441 (citing as persuasive *Castillo v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (affirming dismissal under § 1915(e)(2)(A) when the unrebutted evidence demonstrated that the plaintiff's IFP affidavits contained false information)).

In the Fifth Circuit, dismissal under the IFP statute is predicated on the submission of false allegations in the affidavit rather than the litigant's actual financial status. *See Lay v. Justices-Middle District Court*, 811 F.2d 285 (5th Cir. 1987). In *Lay*, a prisoner submitted an IFP application that accurately represented his financial status, but contained the forged signature of a prison supervisor. *Id.* at 285. When the district court discovered the forgery, it exercised its discretion to dismiss the case under the IFP statute.[7] *Id.* at 286. Noting that "in a strict sense, [the prisoner's] allegation of poverty was true," the Fifth Circuit nevertheless held that the IFP statute was "broad enough to permit a district court to dismiss an action for forgery of the signature on the affidavit attesting to such poverty. Such conduct is directly related to the litigant's privilege to proceed at the expense of the government and the district court has the power to ensure that this privilege is properly granted." *Id.* Based on *Lay*, courts in this circuit must dismiss a case based on a finding that the contents of an IFP application are false, even if the litigant would still qualify as a pauper. *See id.*; *see also Nottingham*, 837 F.3d at 441.[8]

---

[7] Prior to its amendment in 1996, the IFP statute provided courts with discretion as to decide whether to dismiss a case if the allegation of poverty was untrue. *Denton*, 504 U.S. at 27 (citing 28 U.S.C. § 1915(d)). The current version of the statute eliminates that discretion. *See* 28 U.S.C. § 1915(e)(2)(A).

[8] Although the statute is couched in "mandatory rather than permissive terms," *Castillo*, 330 F. App'x at 466, there is no clear consensus among courts as whether dismissal is premised on the falsity of the allegations, or on the falsity of poverty status. Courts in other circuits have held that the IFP statute "does not mandate that the district court dismiss [a plaintiff's] claim if it finds that certain assertions in his affidavit are untrue; instead, it requires the district court to dismiss the claim if it finds that [the plaintiff] is not sufficiently poor to qualify for *in forma pauperis* status given the facts that are true." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000); *see, e.g., Vann v. Comm'r of N.Y. City Dep't of Corr.*, 496 F. App'x 113, 115 (2nd Cir. 2012) (emphasizing that the IFP statute serves to weed out litigants who falsely understate their net worth to obtain IFP status, but does not require dismissal for inaccuracies, misstatements, or minor misrepresentations made in good faith (citations omitted)); *Holly v. Wexford Health Servs., Inc.*, 339 F. App'x 633, 636 (7th Cir. 2009) (stating that the district court, even after learning that plaintiff may have made

A.     **False allegations**[9]

Defendants provide evidence showing that the day after she signed her IFP application in this case, Plaintiff filed various sworn statements in a bankruptcy case in this district that detailed her financial situation.[10] (*Id.* at 8-46.) Those filings listed her total average monthly income in the prior six months as $11,183.33, ownership of a home valued at $405,000, and ownership of a Bank of Texas checking account with $1,000. (*Id.* at 26, 30.) They stated that she was employed and had an estimated monthly income of $11,185.00, and monthly expenses of $6,010.00. (*Id.* at 42-45.) Defendants argue that these filings contradict the statements in her IFP application that she had not had a source of income since June 2017, and had no money in her savings and checking accounts. (*Id.* at 5.)[11]

Defendants also contend that Plaintiff's July 16, 2018 sworn affidavit that she filed in a

---

false statements in his IFP petition, still had a responsibility to first determine the truth of plaintiff's allegation of poverty before dismissing his case); *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir. 1990) (stating that the purpose of the IFP statute "is not to punish litigants whose affidavits contain insignificant discrepancies, but to weed out the litigants who falsely understate their net worth in order to obtain [IFP] status when they are not entitled to that status based on their true net worth"). In other words, "the trigger for mandatory dismissal is the falsity of the 'allegation' of 'poverty,' not the falsity of any one particular statement on the financial affidavit." *Chriswell v. Big Score Entm't, LLC*, No. 11 C 00861, 2013 WL 3669074, at *4 (N.D. Ill. July 12, 2013).

[9] Defendants filed several exhibits with their reply that were not initially filed with their motion without seeking leave of court. These exhibits would not ordinarily have been considered, but Plaintiff had a meaningful opportunity to respond in this case because she filed an objection. *See Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239-240 (N.D. Tex. 1991) ("[W]here a movant has injected new evidentiary materials in a reply without affording the non-movant an opportunity for further response, the court [ ] retains the discretion to decline to consider them."). In addition, the proffered evidence consists of matters of public record, which the court may judicially notice. *See* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed")

[10] Judicial notice of the filings in the Northern District of Texas Bankruptcy Court may be taken, as they are matters of public record. *See Ferguson v. Extraco Mortg. Co.*, 264 F. App'x 351, 352 (5th Cir. 2007) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings"); *see also Silva v. Stickney*, No. 3:03-CV-2279-D, 2005 WL 2445433, at *7 (N.D. Tex. Sept. 30, 2005) (taking judicial notice of a plaintiff's prior case).

[11] The IFP application instructed Plaintiff to identify *any* money held in a bank account or any other financial institution. (doc. 2 at 2.)

6

separate criminal action contradicts her IFP application in this case. (doc. 27 at 5.) In it, she swore that she did not have a salary but was receiving $1,200 a month from "spouse's salary/other household income." (doc. 28 at 13.) She estimated her monthly expenses at $4,040, including $900 for car payments and insurance and $500 for child support. (*Id.*) Under nonexempt assets, she listed a vehicle valued at $5,000, and expressly indicated that she did not have real property or bank accounts. (*Id.*) Defendants argue that this affidavit contradicts the statements in her IFP application one month earlier that she had not received any income since June 2017, paid monthly expenses of $2,250, and had only one asset consisting of a home valued at $407,000 (*see* docs. 2 at 1-2; 27 at 3).[12]

Plaintiff's unsworn response states that because she "incorrectly filed a Chapter 13 Bankruptcy, when she should have filed a Chapter 7 Bankruptcy Petition" in an attempt to "put an automatic stay on her inherited property, she claimed her regular income amounts in May 2018, which she had not had since June 2017." (doc. 26 at 1-2.) It maintains that she has not had any income since June 2017, and that she "did not lie on the Affidavit she completed with regard to this pending case." (*Id.*) Plaintiff cites her appointment of a public defender and the recent foreclosure proceedings on her home as evidence that she does not have any money to pay her debts and is truly impoverished. (docs. 26 at 2-3; 29 at 2, 8-14.) Even if Plaintiff's response had been sworn and

---

[12] Because Plaintiff referenced her inherited property as a reason for filing for bankruptcy, Defendants conducted a property records search and uncovered a mechanic's lien against her and her home that was recorded on December 4, 2018. (docs. 27 at 6; 28 at 14-16.) They maintain that it contradicts the representations in her IFP application that she was not receiving income and did not have any money. (doc. 27 at 6.) The individual recording the mechanic's lien, Chris Ing, swore that on August 20, 2018, Plaintiff agreed to pay his company $27,400.00 for repair work to her home, and that he received a down payment of $3,800.00. (doc. 28 at 14-16.) He also stated that the repairs were completed on August 29, 2018, but Plaintiff had not paid the remaining balance of $24,200.00. (*Id.*) The same Christopher Ing is listed as a co-plaintiff with Plaintiff in *Sarah Marie Bucklew et al. v. Craig Bonham et al.*, 3:19-CV-00435-N-BH. In their amended complaint, he is identified as her boyfriend who has lived with her in the same house since 2013. Mr. Ing submitted an IFP application in that case that is currently pending.

7

sufficiently established that she is a pauper, that is not the test in this circuit for deciding whether her case should be dismissed. *See Lay*, 811 F.2d at 286; *Nottingham*, 837 F.3d at 441.

The evidence of record supports a finding that Plaintiff's IFP application in this case contained false information. The IFP application instructed her to disclose her employment, the average monthly amount of money she was receiving, the amount of money in her bank accounts, her assets, and the average monthly amount of expenses she was paying, and she swore that she was unemployed, had total monthly income of $0, had no money in her Wells Fargo bank accounts, owned a home, and had been paying monthly expenses of $2,250. (doc. 2 at 1-2.) This contradicts her sworn bankruptcy filings, which stated that she was employed, had a total average monthly income of $11,183.33, had a Bank of Texas checking account with $1,000, and had monthly expenses of $6,010.00. (doc. 14 at 26, 30, 42-45.)

The sworn statements as to Plaintiff's income, expenses, and assets in the IFP application further conflict with the financial affidavit she signed the following month in connection with her state criminal case. In her IFP application in this case, she swore that she received no monthly income, paid monthly expenses of $2,250, and her only asset was a home valued $407,000 (doc. 2 at 1-5), but she swore in her financial affidavit that she received a total monthly income of $1,200,[13] had $4,040 in necessary monthly living expenses, and her only asset was a vehicle valued at $5,000 (doc. 28 at 13). Even though it was signed a month after the IFP application, the financial affidavit provides additional sworn statements by Plaintiff of her spousal income, expenses, and assets that

---

[13] In the financial affidavit, the monthly income of $1,200 was attributed to "Spouse's Salary/Other Household Income." (doc. 28 at 13.) The IFP application included a table listing categories of income sources, and instructed the applicant that "for both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months." (doc. 2 at 1-2.) Plaintiff wrote "$0" in the blanks for all categories of income, including the blank for "other," and left the blanks designed for her spouse empty. (*Id.*)

contradict her sworn statements in her IFP application in this case.

Plaintiff fails to provide any evidence or sworn explanation as to why the statements in her IFP application regarding employment, income, expenses, bank accounts, and assets are correct despite being contradicted by her sworn bankruptcy filings and her other financial affidavit, which cover the same time frame. As noted, even if she was a pauper and qualified for IFP status when she filed this case, the false representations in her IFP application in this case mandate dismissal. *See Lay* 811 F.2d at 286; *see also Castillo*, 330 F. App'x at 467-68 (affirming § 1915(e)(2)(A) dismissal based on district court's finding that the litigant's IFP affidavits contained false information). Accordingly, this case should be dismissed under § 1915(e)(2)(A).

**B.    Bad faith, manipulative tactics, or litigiousness**

After a court concludes that dismissal is required under § 1915(e)(2)(A), it has the discretion to determine whether the case will be dismissed with or without prejudice. *Castillo*, 330 F. App'x at 466. "Though the statute is silent as to whether this dismissal should be with or without prejudice, . . . cases are appropriately dismissed with prejudice when 'evidence exists of bad faith, manipulative tactics, or litigiousness.'" *Id.* (quoting *Lay*, 811 F.2d at 286 (recognizing that dismissal with prejudice "is an extreme sanction that should only be imposed when evidence exists of bad faith, manipulative tactics, or litigiousness") (citations omitted)).

Here, the evidence demonstrates that Plaintiff is quite familiar with the IFP system in federal district court, bankruptcy court, and state court.[14] *See Justice v. Granville Cty. Bd. of Educ.*, No.

---

[14] Plaintiff filed three other lawsuits in this district and moved to proceed IFP in those cases in March and April of 2019. *See Sarah Bucklew et al. v. Craig Bonham, et al.*, No. 3:19-CV-00435-N-BH, doc. 5 (filed Mar. 11, 2019); *The Bank of New York Mellon, as Trustee for CIT Home Equity Loan Trust 2003-1 v. Douglas Couchran, et al.*, No. 3:19-CV-00759-L, doc. 4 (filed Mar. 29, 2019); *State of Texas v. Sarah Marie Bucklew*, No. 3:19-CV-01004-B-BN, doc. 3 (filed April 25, 2019).

5:10-CV-539-BR, 2012 WL 1801949, at *4 (E.D.N.C. May 17, 2012) ("An individual's familiarity with the IFP system may be considered in determining whether he or she has acted in bad faith."), *aff'd sub nom. Justice ex rel. AJ v. Granville Cty. Bd. of Educ.*, 479 F. App'x 451 (4th Cir. 2012). She now claims that the statements in her IFP application are truthful, but did not specifically explain why it was contradicted by her sworn statements in her other judicial proceedings in bankruptcy court and the state courts during the same time frame. Although Plaintiff claims her Chapter 13 bankruptcy petition was a mistake, this was her third Chapter 13 bankruptcy petition since 2014, and she admitted that she was attempting to use the bankruptcy proceeding to protect her inherited property. "Nothing in § 1915 permits an applicant, even one who genuinely is unable to afford to pay the filing fee, to pick and choose what financial information to include on the [IFP] application." *Staten v. Tekelec*, No. 5:09-CV-434-FL, 2011 WL 2358221, at *2 (E.D. N.C. June 9, 2011).

Further, Plaintiff's contradictory sworn statements in her IFP application in this case, her sworn bankruptcy filings, and her financial affidavits in state court regarding her financial situation during the same time frame reveal a pattern of attempts to deceive courts about her financial status sufficient to justify dismissal with prejudice. *Castillo*, 330 F. App'x at 466; *see, e.g., Taylor v. Wall*, No. C.A.05-118-T, 2005 WL 1941647, at *3 (D. R.I. July 25, 2005) (finding dismissal with prejudice appropriate where plaintiff engaged in pattern of misrepresenting his financial ability in other cases in the same court and in other courts to avoid payment of court fees); *Igbinadolor v. TiVo, Inc.*, Civ. A. No. 1:08-CV-2580-RWS, 2009 WL 3253946, at *1 (N.D. Ga., Oct. 6, 2009) ("The fact that Plaintiff perpetrated this fraud upon the Court in more than one case warrants the sanction of dismissal with prejudice."). They evidence the type of manipulative tactics that justify

10

a dismissal with prejudice, and dismissal of this case with prejudice is warranted. *See Washington v. M. Rodrigue & Son, Inc.*, No. CIV.A. 12-938, 2013 WL 1814918, at *2-3 (E.D. La. Apr. 29, 2013) (finding the plaintiff's "false and misleading information in his Pauper Affidavit," were "sufficiently egregious to warrant the mandatory dismissal of his case with prejudice, as a penalty for defrauding the Court and as a deterrent of future conduct").

### III. RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED,** and Plaintiff's case should be **DISMISSED WITH PREJUDICE** under § 1915(e)(2)(A).

**SO RECOMMENDED** on this 15th day of May, 2019.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE