IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SARAH BUCKLEW, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-2117-N (BH) |
| | § | |
| OFFICER MATT ST. CLAIR, et al., | § | |
|     Defendants. | § | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Order of Reference*, filed December 14, 2018 (doc. 19), this *pro se* case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.[1] Before the Court are *Defendant City's Motion for Sanctions and Brief in Support Against Pro Se Plaintiff*, filed February 26, 2019 (doc. 31), and *Plaintiff's Motion for Sanctions Against City of Garland*, filed March 14, 2019 (doc. 33). Based on the relevant filings and applicable law, both motions should be **DENIED**.

## I. BACKGROUND[2]

On August 14, 2018, Sarah Bucklew (Plaintiff) filed this civil rights action under 42 U.S.C. §§ 1983 and 1988 against Garland Police Officers Matt St. Clair and M. Clark (Officers), in their individual capacities, and the City of Garland (City) (collectively, Defendants), for allegedly violating her Fourth Amendment rights when she was involuntarily admitted to a psychiatric hospital on May 1, 2018. (*See* doc. 1 at 2, 7-12.) She seeks compensatory damages "against all Defendants, jointly and severally, in an amount to be determined at trial;" nominal damages for violations of her

---

[1] Plaintiff was initially represented by counsel, but he was allowed to withdraw by order dated October 24, 2018. (*See* docs. 16, 18.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

civil rights; punitive damages against the officers; costs, expenses, and attorney fees under 42 U.S.C. § 1988(b); and "other relief" deemed "just and deserving." (*Id.* at 14.)

On January 18, 2019, Plaintiff sent an email with the subject line "50.84.41.133 - Garland Power and Light (City of Garland)" to the City's Mayor and eight members of the City Council. (doc. 31-1 at 1-4.) It purported to provide notice of evidence that her website had been "hacked" by garlandpower-light.org, and that she would be adding a new claim to this lawsuit in connection with the "hacking." (*Id.* at 1.) The email also included summaries of the May 1, 2018 incident leading to her involuntary commitment, as well as of prior instances when she was allegedly "hacked" by the FBI and other law enforcement agencies. (*Id.* at 1-4.) It concluded with the request to "GET THIS IP TO STOP HACKING ME!!" (*Id.* at 4.)

On January 20, 2019, Plaintiff sent an email with the subject line "5-1-20FBI& Garland Police Body Cam Video of Garland Police Illegally, Out-of-Jurisdiction, Without-a-Warrant, Involuntarily Committing me from my house in Sachse" to the City's Mayor, eight members of the City Council, and multiple media outlets. (doc. 31-1 at 5-17.) It requested members of the local media to broadcast the police body camera footage from the May 1, 2018 incident and included the website links to the video. (*Id.* at 5.) It noted that Plaintiff was "involuntarily committed by Garland Police on May 1, 2018," because she had knowledge of "organized crime involving Garland Police and several corrupt members of the FBI." (*Id.*) It went on stating that "[i]f you guys continue to ignore me, the Garland Police officers, city managers, etc. . . are surely subject to Federal Prosecution, as well as everyone that pretended to be good police officers but who in actuality was(sic) not." (*Id.* at 6.) The email contained additional information about the allegations in this lawsuit. (*Id.* at 5-7.) It also included an extensive list of IP addresses connected with the FBI that

2

had "hacked" her websites, computers, and other intellectual property, as well as the logs from her website as further proof of the "hacking." (*Id.* at 7-17.) It concluded as follows:

> My family needs and deserves URGENT and immediate help to a) make the crimes stop! and b) we need help! There is no word to describe the liablity(sic) when I am literally evicted from my house.
>
> Officer Matt St[.] Clair, his brother, Spera and several others should be immediately fired. AND THEY ALL WILL BE FIRED AND FEDERALLY PROSECUTED. I called every single Garland Police officer in April....almost every single one of your cops will be prosecuted and when they do get arrested, GET SOME REAL COPS! GET SOME COPS WITH INTEGRITY!! EVERY SINGLE GARLAND POLICE OFFICER KNOWS WHAT THE CORRUPT MEMBER OF THE FBI IS DOING TO ME AND I CAN PROVE IT.

(*Id.* at 17.)

On January 22, 2019, defense counsel for the City (City's Counsel) sent a letter to Plaintiff requesting that she stop communicating with the City's Mayor or any member of the City Council regarding this lawsuit, and that any further communications relating to the lawsuit should be directed to him or the Office of the City Attorney. (doc. 31-1 at 18.)

On January 24, 2019, January 25, 2019, and February 7, 2019, Plaintiff continued to send similar emails regarding the allegations in this lawsuit to the City's Mayor, members of the City Council, and local television stations. (doc. 31-1 at 19-56, 62-65.)

On February 1, 2019, Plaintiff sent an email with the subject line "Officer Matt St Clair - CPS - Addition to Lawsuit" to City's Counsel and counsel for the officers (Officers' Counsel). (doc. 31-1 at 57-61.) It stated that both attorneys are "highly involved with the (at least one) corrupt member of the FBI hacking me, causing all of this organized crime taking place against my family since June 2017, by a lot of police officers, and wreaking havoc all over my life still to this very day." (*Id.* at 57.) The email noted that Plaintiff would not be "respecting [City's Counsel's] wishes

3

to not contact Garland Mayor and City Council" because they need to be informed of "this organized crime." (*Id.* at 57-58.) It continued noting, "I think they should see that body cam video and my evidence 100%, YOU GUYS ARE HIDING IT FROM THEM. I AM GOING TO TELL THEM!! Promise! And, no, i [sic] will not be sending such evidence through the 'City Attorney of Garland''s office." (*Id.* at 58.) The email included a copy of a fax Plaintiff sent to the Assistant District Attorney at the Texas Department of Family and Protective Services (TDFPS), which concluded:

> I know at least one of you two, is the significant brains behind these crimes, including what the heck happened with [Child Protective Services]. I would stop engaging in organized crime, if I [sic] were yall [sic] and tell the Mayor and City Council members the truth or I will.

(*Id.* at 58-61.)

On February 11, 2019, Plaintiff called the City's Mayor, but her call was redirected to City's Counsel. (doc. 31 at 3.) On February 12, 2019, she sent a cease and desist letter to City's Counsel in his capacity as attorney for "Garland Power and Light" (C&D Letter). (doc. 31-1 at 78-79). It referenced their phone conversation on February 11, 2019, in which Plaintiff identified two IP addresses associated with Garland Power and Light that had been "hacking" her website. (*Id.* at 78.) Despite her request for the "hacking" to stop, the C&D Letter noted that "these IP's still continued to hack me, still, after our conversation." (*Id.*) It further stated:

> As per our phone discussion on, yesterday, 2/1/2019, you are very clearly aware of who, what is hacking me and why, including that which is originating from Garland Power & Light. You are clearly aware someone is using multiple IP addresses registered to Garland Power and Light to hack my website. This was evident by your response to my accusation regarding this, yesterday. I find it ironic, my electric was to be disconnected, yesterday which is why I was trying to call the Mayor, while Garland Power and Light is hacking my website, multiple times a day, very clearly at your direction, sir. And if it is at your direction Garland Power & Light is hacking me, then you are involved in the housing scheme, happening with my house.

(*Id.* at 78-79.) It noted that if Plaintiff did not receive an "offer to make financial amends to [her]

4

family, another lawsuit will immediately commence." (*Id.* at 79.)

Plaintiff's website (www.sarahbucklewblog.com) includes a scan of City's Counsel's business card, with the words "Organized Crime" stamped across it in red letters; a screen shot of Officers' Counsel's photograph, with the words "Illegal Organized Crime" stamped across it in red letters; and allegations that both attorneys are engaged in criminal activity that violates the Racketeer Influenced and Corrupt Organizations (RICO) statutes, that the City's attorneys are engaged in organized crime; and that Officers' Counsel "illegally acquir[ed] a network of houses…owned and operated by attorney, [Officers' Counsel], under a corporate alias as a cover" in an effort to "hack" Plaintiff's computers. (doc. 31-1 at 81-99.)

On February 26, 2019, the City filed its motion for sanctions against Plaintiff. (doc. 31 at 6.) On March 14, 2019, Plaintiff filed her own motion for sanctions against the City and City's Counsel. (doc. 33.) She responded to the City's motion on March 18, 2019, (doc. 35), but the City did not file a reply. The City responded to Plaintiff's motion on April 4, 2019, (doc. 40), and Plaintiff replied on April 11, 2019, (doc. 41). On May 24, 2019, all of Plaintiff's claims against all of the defendants were dismissed with prejudice. (doc. 56.)

## II. CITY'S MOTION FOR SANCTIONS[3]

The City asks the Court to invoke its inherent power and issue "appropriate sanctions against

---

[3] Even though final judgment has been entered in this case, the Court retains jurisdiction to consider the pending motions for sanctions. The Fifth Circuit has found that the collateral jurisdiction doctrine permits courts to impose sanctions even after a final judgment on the underlying merits has been entered. *See Ratliff v. Stewart,* 508 F.3d 225, 229-30 (5th Cir. 2007); *see also Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (a court retains jurisdiction to impose sanctions and award attorneys fees after an action is dismissed and it no longer has power to consider the merits). In fact, "a district court always has jurisdiction to impose sanctions designed to enforce its own rules, even after that court no longer has jurisdiction over the substance of a case." *Fleming & Assocs. v. Newby & Tittle*, 529 F.3d 631, 637-38 (5th Cir. 2008).

5

the Plaintiff for conduct that violates the standards set forth in *Dondi*.[4]" (doc. 31 at 6.) It contends that City's Counsel asked Plaintiff to stop communicating with his clients about this lawsuit but she continued to do so, and that she has made "personal attacks on counsel." (*Id.* at 4-6.)

Courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id.* "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions" *Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 292-93 (5th Cir. 1997) (citations omitted). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). "[T]he threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir.1995). A court's inherent power is not "a broad reservoir of power, ready at the imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir.1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Before imposing sanctions against a party under its inherent power, the court must make a specific finding that the party acted in bad faith. *In re Moore*, 739 F.3d 724, 729-30 (5th Cir. 2014) (citing *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (citation omitted)). Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind

---

[4] See *Dondi Props. Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (*en banc*) (*per curiam*) (available at http://www.txnd.uscourts.gov/pdf/Notablecases/Dondi.PDF).

affirmatively operating with furtive design or ill will." *Turfgrass Grp., Inc. v. Ne. Louisiana Turf Farms, LLC*, No. CIV.A. 10-1354, 2013 WL 6145294, at *3 (W.D. La. Nov. 20, 2013) (quoting *United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999)). Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay. *See Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988). The court's finding of bad faith "must be supported by clear and convincing proof," which is a "high standard" that requires "more than a preponderance of the evidence." *See Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001) (citing *In re: Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). In other words, the evidence supporting a finding of bad faith "must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case." *See id.* "Courts have the authority to make credibility determinations to resolve whether such misconduct has occurred." *United States v. Fisch*, No. CR H-11-722, 2018 WL 2335743, at *4-5 (S.D. Tex. May 23, 2018) (citing *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808-09 (5th Cir. 2003)).

Here, the City argues that "appropriate sanctions" against Plaintiff are warranted because her conduct "[has] fallen well below" the standards of litigation conduct established in *Dondi*. (doc. 31 at 6.) It contends that the standards of *Dondi* also apply to *pro se* parties, and "Plaintiff's harassing emails, harassing statements to opposing counsel, and conduct are beyond the bounds of *Dondi* and reflect a malicious contempt for this District's rules of civility." (*Id.* at 5-6.) *Dondi* "sets forth standards of conduct for counsel (and pro se parties) to follow throughout litigation" for the Northern District of Texas. *Nguyen v. Korean Airlines Co.*, No. 13-CV-509-Y, 2014 WL 11460400, at *1 (N.D. Tex. Sept. 18, 2014). The City does not provide any legal authority supporting inherent power sanctions by a court against a *pro se* party for violating the standards of *Dondi*, however.

7

Even assuming the standards of *Dondi* apply to a *pro se* party and Plaintiff's conduct violated those standards, the City fails to offer "clear and convincing evidence of bad faith" to warrant sanctions under the Court's inherent powers. *In re Moore*, 739 F.3d at 730 (quoting *Crowe*, 261 F.3d at 563). It contends that she sent "harassing emails" and attempted to call the City's Mayor, notwithstanding City's Counsel's request for her to cease direct communications with his clients. (doc. 31 at 3-4, 6). It requests an order barring Plaintiff from directly communicating with the City. (*Id.* at 6.) There is no general rule prohibiting a party from directly contacting a represented opposing party, however. *See Restatement (Third) of Law Governing Lawyers*, § 99 cmt. k. (2000); *see also Lewis v. S.S. Baune*, 534 F.2d 1115, 112 (5th Cir. 1976) ("Courts have consistently held that parties have a right to settle or compromise their litigation without the knowledge or consent of their counsel").

In addition, although Plaintiff called the City's Major's office after receiving the request from City's Counsel, her reason for the phone call was regarding "hacking" issues unrelated to this lawsuit. (doc. 35 at 11.) Significantly, she subsequently agreed to stop contacting the clients of City's Counsel. (doc. 31 at 8.) The City also provides three emails she sent to the City's Mayor and the City Council, which stated that they were either "completely clueless" as to the activities of the City's police or were "also involved in organized crime." (doc. 31-1 at 19-21.) Although the emails included disparaging comments and were critical of the City's Mayor and City Council, they do not constitute evidence of bad faith conduct. *See Bergquist v. FyBX Corp.*, No. CIV. A. 02-722, 2003 WL 22384934, at *2-3 (E.D. La. Oct. 15, 2003), *affirmed by* 108 F. App'x 903 (5th Cir. 2004) (declining to exercise the court's inherent power to sanction based on claims that an attorney "used the language 'scum' in an e-mail and 'f****** a*******' during a phone conference, made

8

accusations of dishonesty, and made snide comments and was inattentive during depositions" because this conduct alone did not amount to bad faith). While three emails sent within the span of a week might be considered an annoyance, it hardly qualifies as bad faith conduct worthy of sanctions. *See In re Moore*, 739 F.3d at 729-30.

The City also requests sanctions for Plaintiff's "harassing statements to opposing counsel," but does not provide sufficient proof to support a finding of bad faith conduct. (*See* doc. 31 at 6.) It claims that during a phone call with City's Counsel, she accused him of "being engaged in a criminal conspiracy" and stated that he would wind up in a federal penitentiary for defending the City.[5] (*Id.* at 3-4.) The City also presents correspondence Plaintiff sent to City's Counsel, which included personal attacks on him and the City. (doc. 31-1 at 78-79.) Even assuming that the City's unsworn allegations about the phone call are true and are considered with the disparaging statements in her correspondence, the evidence does not rise to the level of bad faith that must accompany the imposition of sanctions using a court's inherent powers. *See Goldin v. Bartholow*, 166 F.3d 710, 723 (5th Cir. 1999); *see also Bergquist*, 2003 WL 22384934, at *2-3; *cf. Carroll*, 110 F.3d at 294 (affirming the court's inherent power sanction of a party for threatening opposing counsel with an act of physical violence during a deposition); *Petito v. Brewster*, No. 3-08-CV0006-L, 2008 WL 631326, at *2 (N.D. Tex. Mar. 10, 2008) (quoting *Boland Marine & Mfg. v. Rihner*, 41 F.3d 997, 1005 (5th Cir. 1995) ("The court has little difficulty in concluding that a litigant who threatens to cause physical harm to another party or attorney has 'defiled the very temple of justice' and acted in bad faith.").

The City also fails to provide "clear and convincing proof" that Plaintiff acted in bad faith

---

[5] Plaintiff disputes the claim in the City's motion that she accused City's Counsel of being "the mastermind for these crimes over the phone on February 25, 2019." (doc. 35 at 39.)

by publishing her opinions on the criminality of City's Counsel's conduct. The relevant website postings include excerpts from the RICO statute, a factual summary of the criminal involvement of City's Counsel and Officers' Counsel, and an explanation on why she believes their conduct satisfied the criminal statutes. (doc. 31-1 at 42.) Plaintiff maintains that the allegations on her website about City's Counsel and other individuals with the City are based on her investigation and belief that they are involved in criminal activity. (doc. 35 at 14.) Even if her accusations are baseless, the City does not cite any legal authority supporting the sanction of a party for exercising her First Amendment right by publishing personal opinions on a website. While Plaintiff's criminal allegations against City's Counsel and Officers' Counsel are serious and inflammatory, this does not evince bad faith conduct. *See Bergquist*, 2003 WL 22384934, at *2 ("There must be a finding of bad faith; the Court's mere displeasure is not enough.") (citing *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)). In conclusion, the City's contentions and allegations are insufficient to support a specific finding that Plaintiff acted in bad faith as required for imposition of sanctions under the Court's inherent power. *See Chambers*, 501 U.S. at 44; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (a specific finding as to whether counsel's conduct constituted or was tantamount to bad faith would have to precede any sanction under the court's inherent powers). While some of Plaintiff's behavior does not comport with the standards of *Dondi*, the record does not support the "required high level of culpability" for a specific finding of bad faith. *See Goldin*, 166 F.3d at 723; *see also Elliott*, 64 F.3d at 217 ("Although the district court clearly indicated its displeasure at [the sanctioning party's] conduct of this case, it failed to make a specific finding of

10

bad faith.").[6] Because the record lacks "clear and convincing evidence of bad faith" to support sanctions under the Court's inherent powers,[7] the City's motion for sanctions against Plaintiff should be **DENIED**.

### III. PLAINTIFF'S MOTION FOR SANCTIONS

Plaintiff requests "appropriate sanctions" against the City and City's Counsel for lying to her "about what he stated he would specifically state in the 'Motion,' which was the agreement the two made on February 25, 2019," and "deceiving the Court regarding the discussion and agreement the two made on the phone call this day," and that she "no longer be required or subsequently asked to 'confer' with [City's Counsel]." (doc. 33 at 12.) Her motion does not cite any rule or statute as a basis for sanctions.

**A.**    **Inherent Power**

Plaintiff's motion for sanctions may be liberally construed as seeking sanctions against the City and its counsel under the Court's inherent power.

***1.***    ***Missing Agreement***

Plaintiff first argues that the City and City's Counsel should be sanctioned because its motion for sanctions did not include their "agreement." (doc. 33 at 4-5.) She contends that on February 25,

---

[6] Even though Plaintiff is proceeding *pro se*, the Court "is not required to condone blatantly frivolous, vexatious, or harassing conduct." *Knighten v. Cave & McKay*, 32 F.3d 566 (5th Cir. 1994). While the parties are not expected to agree on matters that arise in this case, or even like each other, "the court and this district require parties and their counsel to conduct themselves with some level of civility." *See Klayman v. Obama*, No. 3:16-CV-2010-L, 2016 WL 5942227, at *6 (N.D. Tex. Oct. 12, 2016) (instructing the parties and counsel to be mindful of *Dondi* "and its far-reaching implications"). Had the case not already been dismissed, Plaintiff could have been instructed to review *Dondi* and warned that if her unprofessional behavior continued, the Court would exercise its authority to impose sanctions on her, including dismissal of this action.

[7] "The *Dondi* Court also admonished counsel that characterization of an opposing party's conduct as acting in bad faith 'should be sparingly employed by counsel and should be reserved for only those instances in which there is a sound basis in fact demonstrating a party's deliberate and intentional disregard of an order of the court or of obligations imposed under applicable Federal Rules.'" *See Andra Grp., LP v. JDA Software Grp.*, Inc., No. 3:15-MC-11-K-BN, 2015 WL 5459635, at *3 (N.D. Tex. Sept. 16, 2015) (quoting *Dondi*, 121 F.R.D. at 289).

2019, City's Counsel called her to discuss the City's motion for sanctions and stated that "he would put in this 'Motion' that [she] AGREED not to contact Garland City Council members and the Garland Mayor" and "that [she] did not agree to stop writing about this organized crime, as she described it on her blog." (*Id.*) She claims City's Counsel lied to her because this "agreement" was not mentioned in the City's motion and it "appears to be stating the opposite of what was discussed between the two." (docs. 33 at 11; 35 at 52.)

Although Plaintiff's claims that the City's motion for sanctions did not include the "agreement" she entered into with City's Counsel, a summary of it is provided in its certificate of conference:

> The undersigned hereby certifies that he spoke with Ms. Bucklew regarding the relief sought herein. Although Ms. Bucklew indicated she does not intend to contact Garland's Mayor and City Council, she is not agreeable to the relief sought by this Motion and stated she would not agree to refrain from posting defamatory material about defense counsel on her website.

(*See* doc. 31 at 8.) The certificate of conference is consistent with the terms of the "agreement" as alleged in her motion for sanctions. (doc. 33 at 11.) The alleged sanctionable conduct is unsupported by the record.

### 2. *Criminal and CPS Cases*

Plaintiff also requests "appropriate significant sanctions against the City" for its improper conduct in connection with her criminal and CPS cases. (doc. 33 at 12-13.) She contends that on February 13, 2019, City's Counsel contacted the "Prosecuting District Attorney" in her criminal case and requested that he submit a motion to amend her bond conditions and to order a competency evaluation. (docs. 33 at 7; 33-3 at 1.) She claims that the City "has consistently interfered" in her criminal action by bringing up issues of her competency and getting the trial date extended "multiple

12

times" since July 2018. (doc. 33 at 6.) She notes that "instead of [her] having her Pre-Trial on March 1, 2019, the entire setting was to discuss the need for another competency evaluation of [her]." (*Id.*) Plaintiff argues that this was caused by the City because at the hearing, the criminal court judge "was holding in her hand the [C&D Letter] [she] faxed to [City's Counsel] on February 12, 2019, with regard to this pending civil rights action." (*Id.*)

Plaintiff further contends that on February 27, 2019, "a (FOURTH) CPS case was opened since June 2017, by [the City's] false, malicious accusations about [her] parenting." (doc. 33 at 5.) She claims that the CPS case was based on "a report of abuse or neglect made to CPS, alleging [she] drove the children somewhere on a very specific date at the beginning of February 2019." (*Id.*) She "alleges" that the City "reported this FOURTH report to CPS . . . in retaliation to [her] filing suit against CPS on February 20, 2019," and "suing the [City] and Officer Matt St[.] Clair [in] this alleged action." (*Id.*) She also "alleges" that City's Counsel was aware of the federal lawsuit she filed against CPS because he "brought up" that case when he called her on February 25, 2019, to "confer" about the City's motion.[8] (*Id.* at 5-6.)

Here, Plaintiff provides nothing beyond conclusory allegations as proof of the City's and City's Counsel's alleged misconduct in her criminal and CPS cases. She points to the state judge's possession of the C&D Letter, but it fails to establish that the City and City's Counsel had been "interfering" in her criminal case. Further, the fact that City's Counsel had knowledge of her separate federal lawsuit against CPS, without more, is insufficient proof that they provided "false [and] malicious accusations about [her] parenting" to CPS. (*See* doc. 33 at 5.) Even if Plaintiff's allegations are true, there is no "clear and convincing proof" to support a finding that the City and

---

[8] *See Sarah Bucklew et al. v. Craig Bonham, et al.,* No. 3:19-CV-00435-N-BH (filed Feb. 20, 2019).

13

City's Counsel acted in bad faith or abused the judicial process in connection with *this lawsuit*. The alleged conduct in Plaintiff's criminal and CPS cases would not be sanctionable under the Court's inherent powers because they involve matters beyond its "authority to impose sanctions in order to control *the litigation before it*." *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (quoting *NASCO*, 894 F.2d at 703 (emphasis added)); *Portillo v. Cunningham*, 872 F.3d 728, 740 fn. 29 (5th Cir. 2017) (noting that the Fifth Circuit "has repeatedly vacated sanctions that punish conduct that did not occur in front of the district court"); *see, e.g., Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 463 (5th Cir. 2010) (holding the district court lacked inherent authority to sanction an attorney for misconduct that occurred in arbitration because it was not before the district court and not in direct defiance of its orders); *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 593 (5th Cir. 2008) (explaining that the inherent power of a district court does not include "the power to police the administrative courts" and cannot be invoked to sanction "distasteful" conduct that occurred in an administrative court proceeding).

### 3. "Hacking"

Plaintiff finally requests "appropriate significant sanctions" against the City and City's Counsel "for conduct associated with fraud and hacking or unauthorized access . . . of [her] Intellectual Property." (doc. 33 at 13.) She claims that on or about March 9, 2019, her website was "was successfully reconfigured to block scripts from being called on the website of [her] Intellectual Property," which resulted in its "destruction." (*Id.* at 10-11.) Though there had been prior attempts at reconfiguring the web server, she claims it was successful this time "due to the Court unsealing the [TRO motion], [and] the logs . . . as attached exhibits filed with this court on February 20, 2019." (*Id.*) Because the City and City's Counsel were "[t]he only people in the world that had access to

14

the [TRO motion]" once it was unsealed, she argues that City's Counsel used the information from the logs to "destroy" her intellectual property.[9] (*Id.* at 11.)

The evidence fails to support a finding that the City and City's Counsel "reconfigured" Plaintiff's website and "destroyed" her intellectual property. She argues that timing and their ability to access the logs attached to her TRO motion support her claim that they were responsible for "hacking" her website. (doc. 33 at 11.) This is not evidence, but mere conjecture, which is insufficient to support sanctions under the Court's inherent power. *See In re Moore*, 739 F.3d at 730 (explaining that the "high threshold for invoking inherent powers is surmounted" "if clear and convincing evidence supports the court's finding of bad faith or willful abuse of the judicial process"). Even if there was evidence linking the City and City's Counsel to the "hacking" incidents, Plaintiff does not point to "clear and convincing proof" showing they acted in bad faith or in some other improper or prohibited way during this suit. *See Crowe*, 261 F.3d at 563 ("[T]he finding of bad faith must be supported by clear and convincing proof.").

Plaintiff's contentions and allegations are insufficient to support a specific finding that the City and City's Counsel acted in bad faith as required for imposition of sanctions under the Court's inherent power. *See Roadway Express*, 447 U.S. at 767; *see also Petito*, 2008 WL 631326, at *2 (noting "the standard for sanctioning a litigant using the court's inherent powers is extremely high" and requires a specific finding of bad faith) (citing *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001)). The certificate of conference to the City's motion for sanctions contradicts the alleged omission of the "agreement" in that motion. She relies solely on conclusory

---

[9] Plaintiff states that she "will not be attaching the logs as proof of this to this Motion, however, will be prepared to produce such logs, the exact logs wherein the reconfiguring of [her] Intellectual Property on the webserver showing this took place, at the request of this Court directly to [her]." (*See* doc. 33 at 11.)

allegations as proof that the City and City's Counsel had been "interfering" in her criminal case, providing "false [and] malicious accusations about [her] parenting" to CPS, and hacking and damaging her intellectual property. (*See* doc. 33 at 12-13.) Because the evidence fails to establish bad faith conduct by the City and City's Counsel in this case, her request for sanctions under the Court's inherent authority should be **DENIED**.

**B.     Rule 11**

Because Plaintiff's motion is based in part on a filing by the City, it may also be liberally construed as seeking sanctions under Rule 11 of the Federal Rules of Civil Procedure.

Rule 11(b) provides that by presenting a filing to a court, attorneys are certifying that to the best of their belief, after reasonable inquiry, (1) the filing is not being presented for an improper purpose, such as harassment, delay, or increasing costs; (2) any claims and/or defenses in the filing are supported by either existing law or by a nonfrivolous argument for changing existing law or establishing new law; and (3) factual contentions have or will likely have evidentiary support. Fed. R. Civ. P. 11(b). The purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits," *Zuffante v. Stephens*, No. 3:13-CV-1146-B, 2013 WL 4829193, at *1 (N.D. Tex. Sept. 9, 2013) (quoting *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987)).

After notice and opportunity to respond, courts finding a Rule 11(b) violation may impose appropriate sanctions. Fed. R. Civ. P. 11(c)(1). These may include monetary and injunctive sanctions, *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal, *Bell v. Dunn, Johnston & Brown*, No. 3:10-CV-1-M-BH, 2011 WL 759473, at *3 (N.D.

16

Tex. Feb. 7, 2011), *adopted by* 2011 WL 726114 (N.D. Tex. Mar. 1, 2011). Courts have a duty to "impose the least severe sanction adequate" to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993) (quoting *Akin v. Q–L Invs., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992)); *accord* Fed. R. Civ. P. 11(c)(4). The moving party has the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

Rule 11(c)(2) provides that the motion for sanctions must be made separately from any other motion and must describe the specific sanctionable conduct. Fed. R. Civ. P. 11(c)(2). It also contains a safe harbor provision that requires that the motion "be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* This requirement is strictly construed and substantial compliance is insufficient. *Morris v. Thaler*, No. 3:12-CV-4916-N, 2013 WL 2383652, at *2 (N.D. Tex. May 31, 2013) (citing *In re Pratt*, 524 F.3d 580, 586-88 (5th Cir. 2008) (addressing "substantially identical" bankruptcy Rule 9011)). Informal notice and opportunity to withdraw is not an adequate substitute for serving a copy of the motion at least twenty-one days before filing the motion with the court. *In re Pratt*, 524 F.3d at 586-88 (noting courts "have continually held that strict compliance with Rule 11 is mandatory"). The movant has the burden to show compliance with the safe harbor provision. *See id.*; *see also Elliott*, 64 F.3d at 216.

Here, Plaintiff has failed to meet her burden to show that she served her motion for sanctions twenty-one days prior to filing it. Her motion does not include a certificate of conference, or statement that she complied with the requirements of Rule 11. (*See* doc. 33.) Because Plaintiff has not shown that she strictly complied with the safe harbor provision, any motion seeking sanctions

17

under Rule 11 should be **DENIED** on this basis.

## IV.  RECOMMENDATION

Both motions for sanctions should be **DENIED**.

**SO RECOMMENDED** on this 29th day of May, 2019.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE
